**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| RONNIE MICHAEL MARTINEZ, | ) | NO. CV 17-3744-E |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) | **AND ORDER OF REMAND** |
| Defendant. | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on May 17, 2017, seeking review of the Commissioner's denial of disability benefits. The parties filed a consent to proceed before a United States Magistrate Judge on June 13, 2017. Plaintiff filed a motion for summary judgment on January 13,

2018.[1]  Defendant filed a motion for summary judgment on April 17, 2018.  The Court has taken the motions under submission without oral argument.  See L.R. 7-15; Order, filed May 22, 2017.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On August 6, 2012, Plaintiff applied for Supplemental Security Income, asserting disability since June 1, 2008, based on alleged schizophrenia, anxiety, paranoia, and panic attacks (Administrative Record ("A.R.") 204-12, 221, 269).  On October 22, 2015, an Administrative Law Judge ("ALJ") found that Plaintiff suffers from severe psychosis, not otherwise specified, mood disorder, not otherwise specified, autism spectrum disorder, and borderline intellectual functioning (A.R. 20).  According to the ALJ, Plaintiff did not meet or equal any of the listed impairments (A.R. 21-23).

The ALJ determined that Plaintiff retains a residual functional capacity to work at all exertional levels, limited to work involving simple, repetitive tasks in a low stress environment, not requiring fast-paced production or quotas, and not requiring more than occasional interpersonal contact (A.R. 23-30).  The ALJ found that Plaintiff can perform work that exists in significant numbers in the national economy (A.R. 30-31 (adopting vocational expert testimony at A.R. 86)).  Consequently, the ALJ found Plaintiff not disabled (A.R. 18, 31).  The Appeals Council denied review (A.R. 1-3).

---

[1] Plaintiff's motion violates paragraph VI of the "Order," filed May 22, 2017.  Counsel shall heed the Court's orders in the future.

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

> If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

///
///
///
///

**DISCUSSION**

Plaintiff contends, <u>inter alia</u>, that the ALJ materially erred in evaluating whether Plaintiff met or equaled a listed impairment for a Mental Disorder under 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00 <u>et seq.</u> (eff. Aug. 12, 2015 to May 23, 2016) (the "Listings").[2] For the reasons discussed below, the Court agrees with respect to Listing 12.05. Remand is appropriate.

**I.    Summary of the Relevant Medical Record**

Consulative examining psychologist Dr. Bahareh Talei authored a "Complete Psychological Evaluation," dated May 14, 2013, when Plaintiff was 19 years old (A.R. 650-53). Plaintiff reportedly had been receiving "psychotherapeutic and psychological treatment," including psychiatric hospitalization, for depression, anxiety, and paranoid schizophrenia (A.R. 651). Plaintiff reportedly was taking Risperdal, Celexa, Cogentin, Geodon, and Klonopin (A.R. 651). On mental status examination, Plaintiff reportedly was withdrawn and sullen, lethargic and fatigued, with fleeting eye contact, psychomotor

---

[2] The criteria for all of the mental health listings were amended effective January 17, 2017. <u>See</u> <u>Revised Criteria for Evaluating Mental Disorders</u>, 81 Fed. Reg. 66138-01, 2016 WL 5341732 (Sept. 26, 2016) (amending 20 C.F.R. § 404.1520a). Federal courts review administrative decisions using the rules that were in effect at the time the decisions issued. <u>See</u> <u>id.</u> n.1; <u>see also</u>, <u>e.g.</u>, <u>Hall v. Berryhill</u>, 2018 WL 621282, at *5 n.8 (E.D. Cal. Jan. 30, 2018) (applying listings in effect at time of ALJ's decision). Accordingly, the Court has reviewed Plaintiff's claim under the Listings in effect from August 12, 2015 to May 23, 2016.

slowing, dysthymic mood and flat affect (A.R. 651-52). Plaintiff "endors[ed] auditory hallucinations" with "slight bizarreness evident," and had mildly diminished memory, attention, and concentration (A.R. 651-52). According to Dr. Talei, Plaintiff also was "socially inappropriate" (A.R. 653).

Dr. Talei considered Plaintiff's full scale IQ of 70 to be a valid estimation of Plaintiff's functional level (A.R. 652).[3] Dr. Talei opined that Plaintiff's cognitive ability falls within the "borderline" range, and Dr. Talei diagnosed schizophrenia, paranoid type, and borderline intellectual functioning, with a Global Assessment of Functioning ("GAF") Score of 60 (A.R. 652-53). See American Psychological Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 34 (4th Ed. 2000).[4] Dr. Talei opined that Plaintiff would have: (1) an ability to understand, remember, and carry out simplistic instructions without difficulty; (2) moderate inability to understand, remember, and carry out detailed instructions; (3) an ability to make simplistic work-related decisions

---

[3] The Record contains Plaintiff's special education records, which include records reflecting residential treatment for emotional disturbances with inpatient psychiatric treatment. See A.R. 311-627. At the time of his administrative hearings, Plaintiff was living in a group home, attending school and later attending specialized job training for persons with developmental disabilities for 30 hours a week. See A.R. 57-60, 76-78 (hearing testimony); see also A.R. 345-47 (summarizing some of Plaintiff's educational history), 365-69 (information concerning Plaintiff's job training).

[4] A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." DSM-IV-TR, p. 34.

without special supervision; and (4) moderate inability to interact appropriately with supervisors, coworkers, and peers on a consistent basis (A.R. 653).

State agency physicians reviewed Dr. Talei's findings and considered whether Plaintiff met Listings 12.03 (schizophrenia, paranoid and other disorders) or 12.08 (personality disorders) (A.R. 97-99, 112). The state agency physicians found that Plaintiff had "mild" restriction in activities of daily living, "moderate" difficulties in maintaining social functioning, "moderate" difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation (id.). The state agency physicians did not consider whether Plaintiff met any other Listings for mental disorders (id.).

Plaintiff's treating psychologist, Dr. Linda Sitomer, provided a "Therapist Source Statement" dated March 22, 2015 (A.R. 713-15). Dr. Sitomer reportedly treated Plaintiff from June of 2013 to June of 2014 (A.R. 713; see A.R. 665-74 (Dr. Sitomer's treatment records provided in October of 2013 dated back to June of 2013)). Dr. Sitomer diagnosed major depression and cognitive-intellectual disorder, moderate, and assigned a GAF of 35 initially and 38 at Plaintiff's
///
///
///
///
///
///

last session (A.R. 713).[5] Dr. Sitomer endorsed "marked" (i.e., 50 percent loss of ability in an 8-hour workday) to "extreme" (i.e., 100 percent loss) limitations in Plaintiff's occupational and social functioning, and noted that Plaintiff had missed school more than four times per month when he was enrolled (A.R. 714).

///
///
///
///
///
///

---

[5] A GAF score of 31–40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IV-TR, p. 34.

The record contains other GAF scores of 25 for evaluations from March of 2010 (A.R. 384, 405, 527, 536), July of 2011 (A.R. 574), October of 2011 (A.R. 559) and January of 2012 (A.R. 545), when Plaintiff was living in a residential treatment center (A.R. 384). A GAF score of 21-30 indicates that "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." DSM-IV-TR, p. 34.

The record also contains GAF scores of 20 for evaluations from July of 2008 (A.R. 710-11) and April of 2014 (A.R. 689), when Plaintiff was hospitalized involuntarily for psychiatric treatment (A.R. 685-712). A GAF score of 11-20 indicates "[s]ome danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) OR occasionally fail to maintain minimal personal hygiene (e.g., smears feces) OR gross impairment in communication (e.g., largely incoherent or mute)." DSM-IV-TR, p. 34.

**II. The ALJ Committed Several Errors in the Analysis of Whether Plaintiff Meets Listing 12.05.**

At step three of the sequential evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals a listed impairment. See 20 C.F.R. §§ 404.1520(d), 416.920(d). If a claimant meets or equals a listed impairment, he or she is "conclusively presumed to be disabled and entitled to benefits." Bowen v. City of New York, 476 U.S. 467, 471 (1986); accord Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993); see also 20 C.F.R. §§ 404.1525(a), 416.925(a) (discussing the Listings). An impairment meets a listing if the impairment matches all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990), superceded by statute on other grounds as stated in Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir. 2013); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). An impairment or combination of impairments that manifests only some of the criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. at 530; Tackett v. Apfel, 180 F.3d at 1099.

A claimant bears the burden of proving that he or she has an impairment or combination of impairments that meets or equals the criteria of a listed impairment. See Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); see also Sullivan v. Zebley, 493 U.S. at 530-31. Nevertheless, an ALJ must adequately evaluate and discuss the evidence before concluding that a claimant's impairments fail to meet or equal a listing. See Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) ("In determining whether a

claimant equals a listing under step three. . . the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the listed impairments.").

In the present case, the ALJ decided that Plaintiff did not meet or equal Listings 12.03 (schizophrenic, paranoid and other psychotic disorders), 12.04 (affective disorders), 12.05 (intellectual disability), 12.06 (anxiety-related disorders), or 12.10 (autistic disorder and other pervasive developmental disorders) (A.R. 21-23). See Listing 12.00 et seq. As discussed below, the ALJ committed several material errors with respect to Listing 12.05.

**A. The ALJ Erred by Failing to Evaluate and Discuss Whether Plaintiff Met Listing 12.05's Initial Requirement.**

The initial requirement of Listing 12.05 is "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." The ALJ did not indicate whether Plaintiff met this initial requirement (A.R. 21-23). The ALJ did find that Plaintiff's borderline intellectual functioning was "well supported" by the objective clinical findings, and the ALJ appeared specifically to find "sufficient evidence" of Plaintiff's "valid IQ score of 70, prior to age 22" (A.R. 20-21). Compare Listing 12.05 (introductory paragraph requiring onset before age 22) with Listings 12.03(A), 12.04(A), 12.06(A), and 12.10(A) (having no such requirement). However, the ALJ did not make any specific finding concerning whether Plaintiff also

suffered from deficits in "adaptive functioning" initially manifested before age 22. See A.R. 21-23. This was error. See, e.g., Moreno v. Berryhill, 2017 WL 4119064, at *8-9 (C.D. Cal. Sept. 4, 2017) (remanding for consideration of whether plaintiff met Listing 12.05 where ALJ did not consider whether plaintiff had deficits in adaptive functioning); Reed v. Berryhill, 2017 WL 684154, at *4, *7 (W.D. Wash. Feb. 21, 2017) (finding that ALJ erred by failing to consider whether plaintiff met the requirements for Listing 12.05's introductory paragraph and remanding for evaluation of whether plaintiff met the requirements for a listed impairment).

The DSM-IV-TR defines "adaptive functioning" as "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, socioeconomic background, and community setting." See DSM-IV-TR, p. 42; see also Hall v. Florida, 134 S. Ct. 1986, 2009 (2014) (Alito, J., dissenting) ("'[I]ntellectual functions' include 'reasoning, problem solving, planning, abstract thinking, judgment, academic learning, and learning from experience,' while adaptive functioning refers to the ability 'to meet developmental and sociocultural standards for personal independence and social responsibility.'") (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 33 (5th Ed. 2013)). In this case, the record contains conflicting evidence
///
///
///
///

concerning whether Plaintiff manifested "deficits in adaptive functioning" before age 22.[6]

## B. The ALJ's Findings Regarding the Paragraph A Criteria for Listing 12.05 are Ambiguous or Inconsistent.

On page 21 of the ALJ's decision, the ALJ found "sufficient evidence of the 'paragraph A' single criteria" for Listing 12.05 (as well as for the other listings considered). At page 23 of the ALJ's decision, however, the ALJ found that the requirements of paragraph A of Listing 12.05 "are not met. . . ." Where, as here, an ALJ's findings are ambiguous or inconsistent, remand for further administrative proceedings is appropriate. See, e.g., Rodriguez v.

---

[6] This conflicting evidence includes the following reports. Plaintiff was enrolled in special education classes since the eighth grade, based at least in part on emotional disturbance and autism, with conflicting notes regarding whether cognitive disability was suspected (A.R. 312-15, 345-47, 354-57). Plaintiff's adaptive skills were noted as "mildly" impaired (A.R. 347). Plaintiff had struggled and was retained in first grade and had mostly "F" grades in 11th grade (A.R. 345, 399-400), but had mostly passing grades in 9th and 10th grades (A.R. 398). There were observations that Plaintiff was unwilling to work in a classroom, had little motivation to participate in class or complete work, was not working at his ability level, and had difficulties with math and social situations (A.R. 410-12, 442-44, 477-78, 505). Plaintiff scored "significantly" below his grade level on standardized testing (A.R. 506). Plaintiff graduated from high school (A.R. 76-77). Plaintiff was living in a group home and attending specialized occupational training for people with developmental disabilities at the time of the hearings (all prior to age 22), with notes in the record that he struggled even within a highly structured environment (A.R. 76-78, 365-69, 391). Plaintiff had poor school attendance due in part to anxiety (A.R. 345). Plaintiff also had emotional and behavioral problems with associated psychiatric hospitalization(s) and extensive treatment (A.R. 345).

12

Astrue, 2011 WL 1103119, at *9 (E.D. Cal. March 22, 2011); Mingo v. Apfel, 1998 WL 373411, at *2 (D. Kan. July 1, 1998).

**C. The ALJ Erroneously Found Plaintiff Failed to Meet Paragraph C of Listing of 12.05.**

To meet paragraph C of Listing 12.05, a claimant must have "[a] valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Dr. Talei's testing of Plaintiff yielded a full scale IQ of 70 when Plaintiff was 19 years old (A.R. 652). The ALJ characterized this score as "valid" (A.R. 21).

However, the ALJ found that Plaintiff did not meet the remaining part of Listing 12.05(C). The ALJ based this finding on the ALJ's belief that Plaintiff had not shown "marked" restriction of activities in any of three areas of functioning or repeated episodes of decompensation (A.R. 23). Contrary to the basis for the ALJ's finding, however, Listing 12.05(C) does not require "marked" restriction of activities or repeated episodes of decompensation. Listing 12.05(C) requires only that other impairments impose "an additional and significant work-related limitation of function." Compare Listing 12.05(C) with Listing 12.05(D). As discussed below, findings elsewhere in the ALJ's decision prove the existence of other impairments that impose "an additional and significant work-related limitation of function."

1 | The ALJ found Plaintiff suffers from "severe" psychosis, mood
2 | disorder, and autism spectrum disorder, which "cause more than minimal
3 | limitations in the ability to perform basic nonexertional demands of
4 | work activity." See A.R. 20 (citing 20 C.F.R. 416.920(C)). These
5 | findings necessarily meet the remaining part of section 12.05(C). See
6 | Listing 12.00(A) ("For paragraph C, we will assess the degree of
7 | functional limitations the additional impairment(s) imposes to
8 | determine if it significantly limits your physical and mental ability
9 | to do basic work activities, i.e., is a "severe" impairment(s), as
10 | defined in . . . 416.920(C)); Fanning v. Bowen, 827 F.2d 631, 633 (9th
11 | Cir. 1987) (any "severe" impairment meets or equals the "additional
12 | and significant work-related limitation of function" prong of section
13 | 12.05(C) of the Listings); accord Hall v. Berryhill, 2018 WL 621282,
14 | at *5-6 (E.D. Cal. Jan. 30, 2018) (any finding of severe impairment
15 | other than "borderline intellectual functioning" is a per se finding
16 | of an "impairment imposing additional and significant work-related
17 | limitations of functions" per Listing 12.05(C)) (citations omitted);
18 | Markewicz v. Berryhill, 2017 WL 4417226, at *6 (W.D. Wash. Oct. 5,
19 | 2017) (same); Martinez v. Colvin, 2015 WL 4662620, at *7 (E.D. Cal.
20 | Aug. 5, 2015) (same); Strickland v. Colvin, 2015 WL 1728354, at *4
21 | (C.D. Cal. Apr 15, 2015) (same).

## III. **Remand Is Appropriate.**

The Court has discretion under 42 U.S.C. section 405(g) to decide "whether to remand for further proceedings or for an award of benefits." Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001) (citations omitted). "[T]he proper course, except in rare

circumstances, is to remand to the agency for additional investigation or explanation." Treichler v. Commissioner, 775 F.3d 1090, 1099 (9th Cir. 2014) (citations omitted); INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is to remand for additional agency investigation or explanation, except in rare circumstances). A district court should examine whether the record "is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved. . . . Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits." Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) (citations and quotations omitted) (emphasis added).

In the present case, outstanding issues must be determined before deciding whether Plaintiff meets or equals Listing 12.05. For example, the Administration must determine whether Plaintiff exhibited "deficits in adaptive functioning" prior to age 22.

Rather than remanding for further administrative proceedings, some district courts finding errors concerning Listing 12.05(C) have weighed the record evidence and determined the existence or nonexistence of adaptive functioning deficits. See, e.g., Pryor v. Commissioner, 2018 WL 1071266, at *4 (E.D. Cal. Feb. 26, 2018) (reviewing record to find no material error where ALJ's analysis for Listing 12.05(C) was insufficient; plaintiff had not discharged her burden of showing deficits in adaptive functioning because record showed that she was capable of understanding, remembering, and

carrying out simple one-step instructions, performing all of her own personal grooming and hygiene, playing basketball, swimming, watching television, preparing her own meals, shopping in stores for junk food, and she had worked for a brief time); Walker-Williams v. Berryhill, 2018 WL 921504, at *3-4 (D. Or. Feb. 15, 2018) (finding ALJ erred in failing to find plaintiff met Listing 12.05(C) and remanding for payment of benefits where record showed plaintiff was enrolled in special education classes before high school, completed high school while reporting certain subjects were difficult for her, was not able to complete a community college course, was unable to obtain a driver's license, had never lived independently, had limited ability to prepare meals, did not manage her own money, was able to use public transportation to go to places she previously had been, and had a limited, low-skilled work history with reported difficulties remembering and functioning in her jobs when she did not have one-on-one supervision and guidance, but was able to attend to her personal needs such as bathing and grooming, used public transportation without accompaniment, shopped in stores, and could operate a phone and computer); Blacktongue v. Berryhill, 229 F. Supp. 3d 1216, 1220-24 (W.D. Wash. 2017) (weighing conflicting record evidence regarding deficits in adaptive functioning during the developmental period, finding ALJ erred in determining plaintiff failed to meet Listing 12.05(C), and remanding for payment of benefits; record showed that Plaintiff had attended special education classes, dropped out of school, and had not learned to speak until he was 5 or 6 years old; however, record also showed plaintiff was able independently to care for his hygiene and grooming, prepare meals, perform household chores, drive, shop for groceries, visit with family, take his wife to

appointments, care for his six children, and work low-skilled, manual labor jobs); Holler v. Berryhill, 2017 WL 4546380, at *3-5 (W.D. Wash. Oct. 12, 2017) (remanding for an award of benefits where ALJ had found plaintiff failed to show deficits in adaptive functioning because she graduated from high school without special education, had substantial gainful activity, earned online paralegal and medical office assistant certificates and cared for her father when he was ill, as well as for her children; other evidence in the record from the development period showed she was held back a grade, had difficulties with memory and auditory processing, was a "slow learner," was having difficulties in a variety of school areas, missed school due to psychosomatic symptoms, and was given extra time for tests while in school); Wilson v. Berryhill, 2017 WL 5973386, at *4 (D. Or. Oct. 4, 2017) (finding plaintiff disabled under Listing 12.05(C) and remanding for payment of benefits; circumstantial evidence showed requisite deficits in adaptive functioning during the relevant developmental period, where plaintiff attended special education classes, dropped out of high school her senior year, had trouble understanding, and could not obtain a GED because it was too frustrating); Josh v. Berryhill, 2017 WL 4330780, at *7-8 (D. Or. Sept. 29, 2017) (same where ALJ did not clearly and expressly consider whether plaintiff had deficits in adaptive functioning but record showed that plaintiff attended special education classes, did not graduate, performed poorly in school, and medical opinion evidence had found "moderate" limitations in plaintiff's abilities, and ALJ's residual functional capacity determination had precluded plaintiff from persuasive communication tasks, tasks requiring teamwork or work that involved interaction with the public or fast-paced production); Holly v. Colvin, 2017 WL

17

1197816, at *2-3 (D. Or. March 30, 2017) (finding plaintiff disabled under Listing 12.05(C) and remanding for payment of benefits; ALJ erred in determining that plaintiff did not show the required deficits in adaptive functioning during the developmental period, where plaintiff did not receive special education services, left school due to pregnancy, later earned a GED, and had performed substantial gainful activity for years in a position requiring specific vocational preparation, but other evidence suggested that plaintiff performed poorly or marginally in school, had to repeat kindergarten, and had help from her mother and sister with paying her bills, household chores, child care, and reminders and instructions); Holt v. Berryhill, 274 F. Supp. 3d 1187, 1198-99 (W.D. Wash. Apr. 5, 2017) (finding plaintiff disabled under Listing 12.05(C) and remanding for payment of benefits; ALJ erred in determining that plaintiff did not show the required deficits in adaptive functioning during the developmental period, where matter previously had been remanded for the ALJ to consider issue, and record showed that plaintiff had a special education history, poor work history, no driver's license, difficulty living unassisted, and lacked romantic relationships).

Other district courts finding errors concerning Listing 12.05 have remanded for further administrative proceedings. See, e.g., Moreno v. Berryhill, 2017 WL 4119064, at *8-9 (C.D. Cal. Sept. 14, 2017) (remanding for consideration of whether plaintiff met Listing 12.05(C) where ALJ did not consider whether plaintiff had deficits in adaptive functioning and record showed, inter alia, extensive special education history with psychiatric hospitalization, IEPs, behavior problems, and continued challenges despite structured setting);

Alexander v. Colvin, 2017 WL 461611, at *7-12 (D. Or. Jan. 5, 2017) (where ALJ erred by failing to consider whether plaintiff met Listing 12.05(C), and parties argued conflicting evidence regarding whether plaintiff had deficits in adaptive functioning during the developmental period, the ALJ was in the best position to weigh the evidence on remand to determine whether plaintiff met Listing 12.05(C); plaintiff had graduated from high school, was not enrolled in special education classes, attended some college, and had "successful" past work; however, plaintiff also had never lived alone, never developed complex relationships, and never managed a check book; plaintiff did not socialize with friends, had struggled to maintain work, depended on her family, was a slow learner, struggled academically, failed her driver's test several times, and had been laid off several times from work due to performance issues).

Under the circumstances of the present case, this Court believes that a remand for further administrative proceedings is appropriate. The Court does not believe that it should weigh the persuasiveness of the conflicting evidence and make findings of fact on issues reserved to the Commissioner. See id.; see generally, Dominguez v. Colvin, 808 F.3d at 407.

///
///
///
///
///
///
///

**CONCLUSION**

For all of the foregoing reasons,[7] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: April 25, 2018.

/S/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[7] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time.